UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA
    Plaintiff,

v.                 Case No. 05-80750
                  Judge Avern Cohn

RICHARD LEE THOMPSON
    Defendant.
_____/

**ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE[1]**

**I. Introduction**

  This is a criminal case. Defendant Richard Lee Thompson is charged with the following counts under 21 U.S.C. § 841(a)(1): (1) possession with intent to distribute cocaine; (2) possession with intent to distribute heroin; (3) possession with intent to distribute marijuana; and (4) possession with intent to distribute cocaine and cocaine base. Thompson moves to suppress evidence obtained during the execution of two search warrants that led to his arrest and indictment. Thompson argues that the warrants were obtained in violation of his Fourth Amendment rights because probable cause to issue the warrants was based upon an affidavit containing hearsay information provided to a confidential informant by an unidentified third party whose credibility was unknown. For the reasons that follow, Thompson's motion is DENIED.

---

[1] Thompson requested an evidentiary hearing regarding this matter. At the motion hearing, held on September 7, 2006, the parties agreed that a hearing was not required because the decision turns on an evaluation of the affidavit supporting the search warrants.

1

## II. Background

Special Agent Edward Dosch (Dosch) of the Drug Enforcement Administration (DEA) presented the affidavit on which the search warrants were issued by a magistrate judge. The facts set forth below reflect the contents of his affidavit.

In August, 2005, a confidential informant (DEA-1) provided information to DEA agents that for the past several months a car wash located at 12632 East Eight Mile, Detroit, Michigan (the carwash), was being used as a distribution site for narcotics. He further advised that the building adjacent to the car wash, located at 12600 East Eight Mile (the building), was being used as a storage facility for large quantities of narcotics. Dosch stated in his affidavit that DEA-1 had proven credible in the past, and had provided Dosch with information that lead to the execution of a federal search warrant, a consent search, the arrest of two individuals, and the seizure of approximately 100 grams of heroin and approximately $100,00.00 in cash.

DEA-1 relayed that he had obtained his information from a person called "Bum" who said that he provided cleaning services for the building. Bum also told DEA-1 that a man called "Rick" resided in the upstairs apartment and that he (Bum) had observed approximately four kilograms of cocaine in a bag in the apartment on August 9, 2005.

DEA-1 told Dosch that on August 10, 2005, he met with Bum outside of the apartment and during their meeting he observed a black male, who was dark complected and about six feet tall, exit the front door of the apartment. The man talked to Bum briefly then re-entered the apartment. Bum identified this person as "Rick" to DEA-1.

Dosch's review of public database records revealed that the ground floor of the

building consisted of a vacant commercial business, and that the second floor contained a residential apartment. He also determined that Charles Roger Byrdsong (Byrdsong) was the owner and resident of the building.[2] Dosch noted in his affidavit that Byrdsong had a 1995 conviction for a controlled substances violation and also received three years of probation for a controlled substances violation in 2000. Dosch also reviewed records from the Michigan Secretary of State showing that Byrdsong had several vehicles registered to him at another Detroit address. Dosch stated in his affidavit that he has knowledge from training and experience that large scale drug traffickers often reside away from their drug storage locations and have employees of their drug organizations reside at and maintain the drug storage location.

Dosch's research also revealed that Roderic Daryl Fields (Fields) was a person associated with Byrdsong and his address.[3] Dosch noted in his affidavit that Fields had an assault conviction. A review of a photograph on file with the Michigan Secretary of State was consistent with the description DEA-1 provided for the man Bum identified as "Rick". Dosch stated in his affidavit that he believed that "Rick" is a contraction of the name Roderic.

After receiving this information, DEA agents and officers of the Madison Heights Police Department established surveillance at both the building and the carwash on August 10, 2005. DEA agents and officers observed numerous individuals carrying

---

[2] Dosch did not provide information regarding the ownership of the carwash in his affidavit.

[3] Dosch did not specify how Fields was associated with Byrdsong or the address in his affidavit.

boxes from the building to the carwash.  Dosch noted in his affidavit that from his training and experience he knows that it is not uncommon for drug organizations to have their drug storage location in close proximity to their distribution location to facilitate the quick supply to the distribution location.

Agents further observed a Jeep pull into the carwash bay area, and then observed someone place a duffle bag placed into the vehicle.  The Jeep then departed the area without receiving any carwash services.  Agents followed the Jeep from the carwash to a storage unit.  Dosch stated in his affidavit that he knows from his training and experience that drug traffickers often use storage units to store narcotics.

During the surveillance, agents also observed numerous persons standing outside of both the building and the car wash, constantly looking in all directions and using cell phones.  Dosch noted in his affidavit that from his training and experience he knows that drug organizations often employ persons as lookouts to detect law enforcement presence.

Based on the information in Dosch's affidavit, the magistrate judge issued two search warrants--one for the building located at 12600 E. Eight Mile, and one for the carwash located at 12632 E. Eight Mile, on August 10, 2006.  The criminal complaint states that Thompson was arrested in the parking lot of the carwash.  It further states that during the surveillance, agents observed Thompson enter, exit, and lock the building storage room on several occasions.  Agents also observed Thompson travel back and forth from the apartment to the carwash.  During his arrest, agents found a set of keys in Thompson's pants pockets.  One of the keys opened the building storage room where three kilograms of cocaine, one ounce of heroin, and small quantities of

crack cocaine and heroin packaged for street level distribution were found. Agents also searched the second floor apartment and found documents addressed to Thompson, and one-half (½) pound of marijuana.

### III. Analysis

#### A. The Standard for Probable Cause

The Fourth Amendment guarantees that "no Warrant shall issue, but upon probable cause, supported by Oath or affirmation." U.S. CONST. AMEND. IV. In Illinois v. Gates, the Supreme Court explained that probable cause is "a fluid concept-turning on the assessment of probabilities in particular factual contexts-not readily, or even usefully, reduced to a neat set of legal rules." 462 U.S. 213, 232 (1983). Accordingly, the Supreme Court in Gates rejected previous, more rigid tests in favor of the "totality-of-the-circumstances" test. Id. at 238. When faced with an application and affidavit for a search warrant, "the task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. Id.

Generally, a magistrate judge's determination as to probable cause is entitled to deference by a reviewing court. Id. at 238-239. A reviewing court's role is limited to deciding "whether the evidence as a whole provided a 'substantial basis' for the Magistrate's finding of probable cause." Id.; Massachusetts v. Upton, 466 U.S. 727, 733 (1984).

## B. The Parties' Arguments

Thompson first argues that Dosch's affidavit failed to establish probable cause because he relied on unsubstantiated hearsay information supplied by an unidentified source of information, whose credibility and reliability were unknown. Therefore, Bum's information by itself was insufficient to establish probable cause. Thompson says that Dosch received his information from DEA-1, who had no personal knowledge of any drug activity in connection with the building or the carwash. Instead, all of DEA-1's information regarding drug activity came from Bum whose information was not reliable because the affidavit did not provide any information regarding Bum's identity, credibility, or familiarity with the addresses. Moreover, Thompson says that Dosch failed to indicate how Bum knew that the building was a storage facility for narcotics and that the carwash was a facility used to traffic narcotics.

The Government responds that Thompson has mischaracterized Bum as an informant who's credibility must be vouched for or independently corroborated. The Government argues that the source of information was specifically identified in the affidavit as DEA-1, who Dosch cited as a reliable confidential informant. Next, the Government argues that Dosch was not required to vouch for Bum's credibility because Bum was an unwitting citizen. As such, Bum should be considered reliable because he did not know that he was talking to someone associated with law enforcement and did not have any reason to color or shade the observations he provided to DEA-1. The Government also says that Bum was reliable because he sufficiently identified himself (as the person who cleans Ricks apartment), and provided DEA-1 with sufficiently detailed information regarding when and where he saw illegal narcotics, and also how

narcotics were being distributed.

Next, Thompson argues that the search warrants failed to establish a sufficient nexus between the address to be searched and the alleged criminal activity. Thompson restates that he believes Bum's information was unreliable, and adds that neither DEA-1 or agents actually observed any drugs or any direct evidence that drugs were being stored or sold at either location. Thompson points out that DEA-1's only personal knowledge in this matter was the observation of a single, brief conversation between Bum and a man Bum identified as "Rick". Thompson says that this conversation was not indicative of criminal activity. Likewise, Thompson argues that the activity the agents observed during their surveillance of the building and carwash was consistent with the innocent activity of a person who owns, operates, or works for a carwash and is transporting or storing equipment, products, or possibly even laundry.

Thompson also says that Bum's information was not sufficiently corroborated because Dosch did not describe in his affidavit the boxes and bags being carried from the building to the carwash or the people carrying them. Dosch also failed to describe the Jeep or driver of the Jeep that pulled into the carwash bay, picked up a duffel bag and delivered it to a storage unit. Dosch did not provide the address of the storage unit or provide the identity of the person renting the unit. Finally, Thompson points out that Dosch failed to elaborate on the basis for Byrdsong's conviction and probation sentence, as well as the number and type of vehicles that Byrdsong owned and whether any of them is a Jeep or associated with either address.

The Government maintains that the search warrants established a sufficient nexus between the addresses to be searched and the criminal activity because Dosch

sufficiently corroborated DEA-1's information through his records search and through the surveillance of the building and carwash on August 10, 2005. The government says that Dosch appropriately relied upon and cited to his training and experience in concluding that the activities that the agents observed on the night of August 10, 2005, indicated the presence of criminal activity at the addresses.

### C. Resolution

Regarding whether Dosch properly relied on Bum's information to establish probable cause, the Court first looks to the standards governing the use of informants becuase Dosche received his information from DEA-1, a confidential informant. There is no bright-line rule as to when information received from an informant may establish probable cause. As the Supreme Court explained in Adams v. Williams: "Informant's tips, like all other clues and evidence coming to a policeman on the scene may vary greatly in their value and reliability. One simple rule will not cover every situation." 407 U.S. 143, 147 (1972). However, is well settled that probable cause may be founded upon hearsay and information received from informants. Franks v. Delaware, 438 U.S. 154 (1978). Moreover, the Supreme Court explained that under the totality-of-the-circumstances test, courts should not analyze "bits and pieces of information in isolation." Massachusetts v. Upton, 466 U.S. 727, 732 (1984). Instead, a court should consider an affidavit in its entirety, "giving significance to each relevant piece of information and balancing the relative weights of all the various indicia of reliability (and unreliability) attending the tip." Id.

As to how much weight to give an informant's tip, Supreme Court in Gates explained that "veracity" and "reliability",

>are to be "understood as relevant considerations in the totality-of-the-circumstances analysis that traditionally has guided probable cause determination: a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability.

462 U.S. at 233. Likewise, in the recent Sixth Circuit case, United States v. McCraven, the court of appeals summarized the circuit's approach to evaluating an informant's tip, as set forth in United States v. Allen, 212 F.3d 970 (6th Cir. 2000):

>Under Allen, while an affidavit must state facts supporting an independent judicial determination that the informant is reliable, those facts need not take any particular form. See id. at 975-76. The affidavit could state that police corroborated significant parts of the informant's story. Or the affiant could attest "with some detail" that the informant provided reliable information in the past. Id. at 976. Or there could be other indicia of the informant's reliability, such as a detailed description of what the informant observed first-hand, or the willingness of the informant to reveal his or her name. As long as the issuing judge can conclude independently that the informant is reliable, an affidavit based on the informant's tip will support a finding of probable cause.

401 F.3d 693 (6th Cir. 2005).

The parties have cited and discussed several cases in which warrants were issued based upon, at least partially, information provided from an informant who received information from a third party.[4] Ultimately, these cases are limited in their

---

[4] In addition to the two cases analyzed here, the parties discuss United States v. Artez, 398 F.3d 1106 (10th Cir. 2004)(involving an unwitting third party used as an intermediary in a controlled drug purchase); and United States v. Smith, 462 F.2d 456 (involving an unwitting third party who relayed information to a confidential informant)(analyzed under the pre-Gates, Aguilar-Spinelli 2-prong analysis). The parties also discuss United States v. Harju, 384 F. 2d 1278 (E.D. Wis. 2005), rev'd, 2006 WL 2987116 (7th Cir. 2006); and United States v. DeQequasie 373 F.3d 509 (4th Cir. 2004). Both cases however, are not directly applicable because they were analyzed under the "good faith" exception to the exclusionary rule. The Government additionally cites to United States v. Bond, 12 F.3d 540 (6th Cir. 1993)(involving the evaluation of an affidavit containing a tip relayed to a confidential informant from the informant's relative).

applicability to the instant case because a finding of probable cause in any case turns on the particular facts and circumstances of that case.[5] Nonetheless, the Court finds an analysis of two cases to be particularly instructive because of the similarities of the facts to the instant case.

In <u>United States v. Jordan</u>, 999 F.2d 11(1st Cir. 1993) the court of appeals found that probable cause existed[6] to issue a search warrant for Jordan's residence where a law enforcement agent presented an affidavit in which he stated that he had conducted two controlled drug buys in which a confidential informant purchased marijuana from an unwitting third party witness named David Moyse. Moyse told the informant that he had purchased the marijuana from Jordan, and the informant relayed this information to the agent. <u>Id</u>. at 12. Jordan moved to suppress the evidence collected pursuant to the search warrant. <u>Id</u>. Like Thompson, Jordan pointed out that neither the agent nor the informant had any direct contact with the defendant, nor directly observed any drug buy or transfer at the defendant's residence. <u>Id</u>. at 13. Like Thompson, Jordan also argued that the third party's information was unreliable. <u>Id</u>. Specifically, Jordan said that Moyse's statement that the marijuana came from Jordan's home was "double hearsay" and unreliable because Moyse was a marijuana user and convicted drug offender. <u>Id</u>. Finally, like Thompson, Jordan argued that the affidavit did not demonstrate a "fair

---

[5] Indeed the Supreme Court has cautioned that questions of reasonableness under the Fourth Amendment must be decided on the facts and circumstances of each case, and that seldom will one determination be a useful precedent for another. <u>Ornelas v. United States</u>, 517 U.S. 690, 696, 698 (1996).

[6] In <u>Jordan</u>, the district court bypassed any probable cause determination, and upheld the warrant on the "good faith" exception to the exclusionary rule. 99 F.2d at 13.

10

probability" that marijuana or related contraband would be found at his residence because the marijuana Moyse sold to the informant could have come from a number of sources. Id.

While the court of appeals agreed that the agent's affidavit did not exclude the possibility that the marijuana may have come from some other place other than Jordan's residence, it found that under the totality-of-the-circumstances, the affidavit was sufficient to support the issuing judge's "common-sense" decision. Id. The court of appeals further explained that

> hearsay statements, like those of Moyse, and the informant, often are the stuff of search warrant affidavits. Their reliability may be corroborated by various means, including direct surveillance or circumstantial evidence, or vouchsafed by the affiant-in this case a highly experience law enforcement officer.

Id. at 13-14. In upholding the warrant the court of appeals emphasized that the information had come from a confidential informant who had proven reliable in the past.[7] Moreover, the court of appeals found that the agent had sufficiently corroborated Moyse's information by conducting surveillance of two "controlled" buys, one in which the agent followed Moyse and the informant to Jordan's residence.

A second case, United States v. Leake, 998 F.2d 1359 (6th Cir. 1993), in which the Court of Appeals for the Sixth Circuit found that the warrant issued was not supported by probable cause, is also helpful to an analysis of this case. Although the court of appeals in Leake analyzed the reliability of a tip provided to a detective by an anonymous caller and not a tip from a third party witness, we find that Bum is similar to

---

[7] Citing to United States v. Ciampa, 793 F.2d 19, 24 (1st Cir. 1984), the court of appeals also pointed out that the confidential informant's reliability may have been sufficient in itself to establish the reliability of the hearsay statement.

the caller because in both situations the affiant had limited information about the identity of the tipper, and had no information about whether the tipper had provided reliable information to law enforcement in the past.  In Leake, a detective presented an affidavit stating that he received a phone call from an anonymous person who identified himself as a tradesman who had been hired to perform work at a specific residence to which he provided the address.  998 F.2d at 1361.  The caller stated that while in the basement of the residence, he smelled the distinctive odor of marijuana (which he recognized because he had smoked marijuana when he was younger), and saw what appeared to be bales of marijuana in the corner.  The caller stated that the people at the residence appeared to be dealing rather than possessing the marijuana for private use.  Id.  The detective then personally surveilled the residence for two hours on two successive evenings.  Id.  The surveillance however revealed no undue traffic at the residence, or any other unusual activity.  Id.  The detective also listed the license plate numbers and registration of the vehicles parked at the residence during his surveillance.  Id.  Pursuant to a warrant based on this information, over 300 pounds of marijuana were recovered from Leake's residence.

Leake moved to suppress the evidence, which was ordered by the district court.  Id. at 1362.  The decision was affirmed on appeal.  Id.  The court of appeals explained that there were two principle problems with the affidavit.  Id. at 1365.  First, the court of appeals found that the information provided by the anonymous caller was not "rich" in relevant detail in either its quality or quantity of information.  For instance, the caller did not provide name of the residents even though he stated that he was hired to work at the residence; nor did he provide the date(s) of when he saw the marijuana.  Id.

Second, the court of appeals found that detective's corroboration of the information provided by the caller was insufficient. The detective admitted in his affidavit that he saw nothing out of the ordinary during his surveillance. Id. Likewise, although he researched the licence plates of the cars parked outside the house, the detective failed to elaborate on the significance of the ownership and registration of the cars to the information provided by the caller. Id.

Turning now to Thompson's motion, as a preliminary matter, the Court finds it unnecessary to categorize Bum as an either an unwitting citizen or as a confidential informant.[8] Bum does not fit neatly into either of these categories because his information was relayed to Dosch through a confidential informant. However Bum's information does bear indicia of reliability and the magistrate judge was presented with substantial evidence to find probable cause to issue the warrants. First, Dosch stated in his affidavit that DEA-1 is a reliable confidential informant who has aided law enforcement in the past. This is similar to the confidential informant in Jordan who had provided law enforcement with reliable information in the past. Next Bum's information to DEA-1 was sufficiently detailed. Not only did Bum state a particular date (August 19, 2004) and place (Rick's apartment) where he observed drug activity (4 kilograms of cocaine in a bag); he specified that he had such knowledge because he was hired by Rick to provide cleaning services for the building. This level of specificity is indicative of truthfulness and can be contrasted to the information provided by the anonymous caller in Leake who did not provide the detective with the names of the residents whom he

---

[8] Dosch's affidavit simply does not provide any information regarding Bum's motivation for talking to DEA-1.

said he was hired to work for, or the date(s) when he saw the marijuana in basement.

Third, Dosch independently corroborated Bum's information by performing a records search and by conducting surveillance with other agents and police officers in which they observed activity consistent with Bum's information that the building was the drug storage facility and that the carwash was the drug distribution site.  Moreover, Dosch reasonably relied on his experience and training as a DEA agent in concluding that these activities were indicative of drug activity.  Dosch's independent corroboration can be contrasted to the detective's in Leake who did not see any unusual activity at the defendant's residence on his two nights of surveillance.  Dosch further performed a records search in which he discovered that the building was owned by Songbryd, a person with past drug connections who had several vehicles registered to him at a different address.  Dosch explained in his affidavit that this was significant because drug distributors often reside at different site than where they keep their drugs.  This can be contrasted with the detective in Leake, who listed the cars registered to the Leake residence but failed to explain why that information was significant.   Next, Dosch discovered that a person named Roderic Fields was associated with the building and he confirmed Field's physical description.  As Dosche explained in his affidavit, this research was significant because Field's description in the Michigan Secretary of State records matched the description provided by DEA-1 of the man Bum identified as "Rick".  Considering this information, the magistrate judge had substantial evidence to find that probable cause supported the issuance of the search warrants.

Next, the warrants sufficiently established a nexus between the places to be searched and the criminal activity alleged.  Thompson makes much of the fact that

14

neither DEA-1 nor the agents actually saw drugs or a drug transaction take place. However, Thompson's argument lacks merit. As discussed, not only was Dosch's information provided by a reliable informant, but the information itself was sufficiently detailed and from a person who stated that he had observed drug activity first hand. Equally as important in establishing the nexus was the agents surveillance on the night of August 10, 2005. Dosch reasonably relied on his training and experience in finding that activity observed at the building and carwash was suspicious and indicative of criminal activity. See United Stated v. Caicedo, 85 F.3d 1184 (6th Cir. 1996)(in finding probable cause, great emphasis is placed upon affiant's experience). The agents observed many persons carrying packages from the building to the carwash. This was consistent with Dosch's training and experience that it is not uncommon for drug organization to have their drug storage location in close proximity to their distribution location to facilitate the quick supply to the distribution location. Next, agents observed numerous persons on cell phones. Dosch explained in his affidavit that drug organizations often employ persons as lookouts to detect law enforcement presence. Likewise, agents followed a Jeep that had been loaded with a duffel bag at the car wash go to a storage unit. Dosch explained in his affidavit that drug traffickers often use storage units to store narcotics. Considering the reliability of the tip as well as the Dosch's independent corroboration, the warrants established a sufficient nexus between the places to be searched and the alleged criminal activity.

### IV.  Conclusion[9]

For the foregoing reasons, the Court finds that the magistrate judges issuance of the two search warrants was based on probable cause.  Defendant's motion to suppress evidence is DENIED.

    SO ORDERED.

                          s/Avern Cohn
                          AVERN COHN
                          UNITED STATES DISTRICT JUDGE

Dated:  October 31, 2006

I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, October 31, 2006, by electronic and/or ordinary mail.

                          s/Julie Owens
                          Case Manager, (313) 234-5160

---

[9]  Because we find that the warrants were supported by probable cause, it is not necessary for the Court to address the Government alternative argument that the evidence should not be excluded under the "good faith" exception to the exclusionary rule.