UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                              Case No. 05-80750
                                              Judge Avern Cohn

RICHARD LEE THOMPSON,

      Defendant.

_____/

## MEMORANDUM AND ORDER DENYING DEFENDANT'S RENEWED MOTION FOR JUDGMENT OF ACQUITTAL

### I. Introduction

    This is a criminal case. On December 13, 2006, following a three-day trial, a jury found the defendant, Richard Thompson (Thompson) guilty of possession with intent to distribute cocaine base (crack-cocaine) in violation of 21 U.S.C. § 841(a)(1). At the same time, the jury acquitted Thompson of possession with intent to distribute 500 grams or more of cocaine, 21 U.S.C. § 841(a)(1), and possession with intent to distribute heroin, 21 U.S.C. § 841(a)(1).[1]

    Before the Court is Thompson's Renewed Motion for Acquittal, FED. R. CRIM P. 29.[2] Thompson argues that the verdict is based on insufficient evidence and is inconsistent with the acquittal on the two other charges.

---

[1] The indictment originally contained four counts. Thompson pled guilty to possession with intent to distribute marijuana.

[2] Thompson moved for acquittal on the basis of insufficient evidence after the Government's case-in-chief. The Court took the motion under advisement.

For the following reasons, the motion is DENIED.

## II. Background

A summary of the evidence presented at trial in the light most favorable to the Government follows.

### A. Surveillance by DEA Agents

On August 10, 2005, Drug Enforcement Administration (DEA) agents conducted approximately three hours of surveillance at 12600 East Eight Mile Road and 12632 East Eight Mile Road in Detroit, Michigan after receiving a tip from an informant that the two premises were being used for the storage and distribution of drugs. 12600 East Eight Mile Road is a two-story building with a first-floor storage room and a second-floor residential apartment. 12632 East Eight Mile Road is a single story building containing a carwash. There is a vacant lot between the two buildings.

During the surveillance, agents observed approximately 13 individuals in the carwash area, including Thompson. Thompson was observed exiting the apartment with a white bag. He took the bag to the carwash and returned to the apartment. Later, Thompson was again observed exiting the apartment with a white bag. This time he was observed unlocking and entering the storage room with the bag. A few minutes later Thompson exited and locked the door behind him. Again, he carried the bag to the carwash. Thompson was later observed entering the passenger side of a Ford Freestyle, parked in the vacant lot, which drove off and returned a short time later.

### B. Execution of the Search Warrants

Shortly after conducting the surveillance, DEA agents executed warrants for the

two buildings. Thompson and five other individuals present at the carwash were arrested. Agents seized a set of keys from Thompson that fit the entry gates and door to the apartment. A separate key fit the door to the storage room.

Thompson's key was used to open the storage room, where a duffel bag containing three (3) kilos of cocaine was seized. From a milk crate, agents also seized separately packaged cocaine, crack-cocaine, and heroin which were stuffed inside of a toilet paper roll. In particular, three grams of crack-cocaine were seized; an Agent testified that this is a distribution amount.

Agents also seized one hundred grams of marijuana from a dresser drawer containing mens garments in the apartment bedroom. The marijuana was packed into five baggies, each containing a resale quantity. Agents also seized residency documents in Thompson's, Kristen O'Neill's (Thompson's girlfriend) and Richard Garderner's (Thompson's father) names.

During the search of the carwash agents seized bags of cocaine. Agents also searched vehicles they observed at the car wash. Inside of a Chevy Astro Van, agents found bindles of heroin. Inside of the Ford Freestyle Thompson was observed entering, agents found $15,000.00 in white plastic bag, and a bag of cocaine.

### C. Testimony of Kristen O'Neill

O'Neill testified that she was Thompson's girlfriend and is the mother of his child. She further testified that she, Thompson, and Garderner had been living in the apartment for approximately three months before the raid. O'Neill also testified she had seen Thompson open the storage room door with a key. She testified that did not possess a key to the storage room door and that her apartment key did not open the

storage room door.  O'Neill also testified that she had also seen other people, including Gardener, go in and out of the storage room to retrieve and take items to the car wash.

O'Neill testified that Thompson distributed marijuana.  She also testified that in the late spring or early summer of 2005 Thompson told her that he was going to branch out and start selling cocaine.  O'Neill also testified that she had observed him cooking cocaine powder into crack-cocaine on two occasions; once at a previous residence, and once in the apartment bathroom.  She also stated that she and Gardener had stolen crack-cocaine from Thompson while they lived at the apartment.

### D.  Jury Instructions

The jury was instructed in pertinent part as follows:

> In order to sustain its burden of proof for the crime of possession of a controlled substance with the intent to distribute that substance as charged in the indictment, the government must prove the following three (3) essential elements beyond a reasonable doubt:
>
> **One:** The defendant possessed the controlled substance described in the indictment;
>
> **Two:** The defendant knew that the substance was a controlled substance; and
>
> **Three**: The defendant intended to distribute the controlled substance.
>
> * * * *
>
> The government does not necessarily have to prove that the defendant physically possessed the controlled substances for you to find him guilty of this crime.  The law recognizes two kinds of possession – actual possession and constructive possession.  Either one of these, if proved by the government, is enough to convict.
>
> To establish actual possession, the government must prove that the defendant had direct, physical control over the controlled substance and

4

knew that he had control of it.

To establish constructive possession, the government must prove that the defendant had the right to exercise physical control over the controlled substance and knew that he had this right, and that he intended to exercise physical control over the controlled substance at some time, either directly or through other persons.

For example, if you left something with a friend intending to come back later and pick it up, or intending to send someone else to pick it up for you, you would have constructive possession of it while it was in the actual possession of your friend.

But understand that just being present where something is located does not equal possession.  The government must prove that the defendant had actual or constructive possession of the controlled substances, and knew that he did, for you to find him guilty of this crime.  This, of course, is all for you to decide.

****

The government does not have to prove that the defendant was the only one who had possession of the controlled substance.  Two or more people can together share actual or constructive possession over property.  And if they do, both are considered to have possession as far as the law is concerned.  This is called joint possession.

You may find that the element of the element of possession, as that term is used in these instructions, is present if you find beyond a reasonable doubt that the defendant had actual or constructive possess, either alone of jointly with others.

But remember that just being present with others who had possession is not enough to convict.  The government must probe that the defendant had either actual or constructive possession of the controlled substances, and knew that he did, for you to find him guilty of this crime.  This , again is all for you to decide.

### III.  Standard for Dismissal

In order to survive a Rule 29 motion, the evidence presented by the Government in its case-in-chief, viewed in light most favorable to the prosecution, must be substantial and competent enough to prove beyond a reasonable doubt that the

defendant is guilty of the offense of conviction. Jackson v. Virginia, 443 U.S. 307 (1979), Valadez-Gallegos, 162 F.3d at 1262.

### IV. Analysis

#### A. Sufficiency of the Evidence

##### 1. Standard

In assessing a challenge to the sufficiency of evidence, the relevant inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). The Court must draw all available inferences and resolve issues of credibility in favor of the verdict. United States v. Jones, 102 F.3d 804, 807 (6th Cir. 1996). The Court does not weigh the evidence or assess witness credibility. United States v. Jackson, 55 F.3d 1219, 1225 (6th Cir. 1995).

##### 2. Argument

##### a. Thompson's Argument

Thompson argues that the evidence taken in the light most favorable to the Government is simply insufficient to establish that he had dominion and control over or intended to distribute the crack cocaine found in the milk crate in the storage room

Thompson points out the Government presented no evidence that he was the only person with a key or access to the storage room. To the contrary, O'Neill testified that she had seen other people enter and exit the storage room.

Second, Thompson says that the storage room was filled with junk, none of

6

which the Government could identify as belonging to him. Moreover, Thompson points out that his fingerprints were not found on any of the drugs in the milk crate.

Third, Thompson says that presumably the jury based its conviction on O'Neill's testimony that she had seen him cooking crack-cocaine, and inferred that the crack-cocaine O'Neill was referring to was the same crack-cocaine found in the storage room. Thompson says this inference was improper because the Government presented no evidence that the crack-cocaine in the milk crate was the particular crack-cocaine that O'Neill claimed to have observed.

Thompson says that the facts here are comparable to those in United States v. Beverly, 750 F.2d 34 (6th Cir. 1984) in which the Court of Appeals for the Sixth Circuit reversed the defendant's conviction for receipt by a convicted felon of a weapon that has been shipped in interstate commerce. The defendant in Beverly was arrested along with two other individuals in a kitchen belonging to one of the other individuals. Id. at 35. During the arrest, an officer noticed a wastebasket between the defendant's and one of the other individual's feet. Id. The officer found two guns in the wastebasket. Id. The defendant's fingerprint was later found on one of the guns. Id. In reaching its decision to reverse the defendant's conviction, the court explained that "receipt" is synonymous with "possession"; and that the Government failed to establish that defendant had "constructive possession" of the gun because it had failed to prove that either the kitchen, the wastebasket, or the gun itself, were within the defendant's direct or indirect control. Id. at 36-37. The Court of Appeals found that in the light most favorable to the government, the evidence established only that the defendant was in a kitchen of a residence that was not his own and standing very close to a wastebasket

containing a gun that he had at some point touched. Id. at 37. The Court of Appeals held that this evidence was not sufficient to establish receipt.

Thompson argues that the evidence here is similarly insufficient because it proves only that he was present at the 12600 address, that he had access to the area where the crack-cocaine was found, and that he had in the past possessed crack-cocaine. Thompson concludes that these proofs are insufficient to show direct or indirect control of the crack-cocaine found in the storage room.

### b. The Government's Argument

The Government argues that the evidence in a light most favorable to it, established that :

- Thompson rented the apartment on the second floor of the 12600 E. Eight Mile.

- In a locked storage room on the first floor of 12600 E. Eight Mile, DEA agents recovered approximately $60,000 in narcotics, including crack-cocaine in a distribution quantity.

- Thompson possessed the only key found to the storage room.

- Although O'Neill testified that others had access to the storage space, only Thompson was observed entering and existing the storage area were the crack cocaine.

- It is a logical inference that access to the storage area containing drugs of that value would be controlled by key access.

- It is a further logical inference that the person having the only key found for the storage area would be the person accountable for any loss of controlled substances, and have the ability to exclude others from taking those drugs.

- On the night of his arrest, Thompson was observed exiting the apartment on two separate occasions carrying a white bag and going to the carwash. On the second occasion he was seen unlocking and entering the storage room, remaining there for a few minutes, and exiting and locking it before walking to the carwash.

- Thompson was seen entering the passenger side of a Ford Freestyle. Agents later seized $15,000.00 in cash from a white plastic bag from under the drivers seat of the vehicle. Cocaine was also found in the console of the vehicle.

- One hundred (100) grams of marijuana were found in the bedroom of the apartment. The marijuana was packed into five bags in a resale quantity.

- Residency papers seized at the apartment showed that Thompson rented the apartment.

- O'Neill testified that Thompson distributed marijuana and told her that he was going to branch out and start selling cocaine; subsequently she saw him cooking crack-cocaine in the apartment bathroom.

- O'Neill testified that she had seen Thompson cook crack-cocaine at a previous residence, and that she and Gardener had stolen crack from Thompson in the past.

Thus, the Government argues the jury could find that beyond a reasonable doubt that Thompson exercised domination and control over the crack-cocaine found in the storage room.

### 3. Resolution

The evidence at trial is sufficient to sustain the conviction. The Government's evidence is admittedly circumstantial. However, it is well established that it is not necessary that each element of the crime charged be supported by direct evidence. United States v. Phibbs, 999 F. 2d 1053, 1064 (6th Cir. 1993). Moreover, "[C]ircumstantial evidence alone can sustain a guilty verdict and ... to do so, circumstantial evidence need not remove every reasonable hypothesis except that of guilt." United States v. Stone, 748 F.2d 361, 362 (6th Cir.1984).

To establish constructive possession, the government must prove that the defendant knew of the presence of the contraband and had the power to exercise dominion or control over it. United States v. White, 932 F.2d 588, 589 (6th Cir. 1991).

Mere proximity to drugs is insufficient alone to establish constructive possession. Id. at 589; United States v. Woods, 544 F.2d 242, 260 (6th Cir. 1976). However, presence coupled with "substantial other incriminating evidence" can demonstrate constructive possession. United States v. Poulos, 895 F.2d 1113, 1119 (6th Cir. 1990).

Thompson's argument that the Government failed to establish that he had constructive possession of the crack-cocaine found in the storage room because it did not establish that he had sole access to the room is meritless. Thompson points to no case which requires that the Government show that Thompson alone controlled access to the storage room –and by implication, the drugs therein. To the contrary, the Government can sustain a conviction for possession with intent to distribute cocaine base by proving joint possession. See United States v. Salgado, 250 F.3d 438, 447 (6th Cir. 2001).

Further, Thompson's reliance on Beverly is misplaced. By virtue of possessing a key, Thompson had the ability to exclude others from the storage room. DEA agents observed Thompson doing just that when he exited and locked the storage room door behind him. The DEA agents observed no one else enter the storage room. In Beverly, the Government failed to produce any evidence that the defendant had the ability to exclude others from the kitchen, or the wastebasket in which the gun was found. Moreover, at least one other individual was within reach of the wastebasket when the defendant was arrested.

O'Neill's testimony that she had seen other people go in and out of the storage area to retrieve and take items to the car wash does not negate the Government's evidence that Thompson controlled it. There was no evidence that the door was

generally unlocked or available to anyone who wanted to enter it.  In fact, O'Neill testified that she was unable to open the storage room door with her apartment key when she tried.  O'Neill's testimony supports the Government's theory that the storage room and carwash were being used to store and distribute drugs, and suggests that the people O'Neill referred to may also have had constructive possession of the contents of the storage room.

Similarly, Thompson's argument that the jury improperly inferred that the crack-cocaine that O'Neill testified that she observed Thompson cooking in the apartment bathroom was the same crack-cocaine found in the storage room, is unavailing.  First, the jury could have reasonably found Thompson guilty without inferring that the crack-cocaine referenced by O'Neill was the same crack-cocaine found in the storage room.  Along with observing Thompson cooking crack-cocaine, O'Neill testified that Thompson distributed marijuana, and that he told her that he wanted to start selling cocaine.  In the light most favorable to the Government, this testimony established that Thompson had a history of dealing drugs, and had a particular association with crack-cocaine.  It further established that Thompson intended to sell cocaine (which can be cooked into crack-cocaine), and had the means and ability to produce crack-cocaine.

Second, even if the jury did infer that the crack-cocaine O'Neill referenced to was the same crack-cocaine found in the storage room, this inference would not have been unreasonable, considering the sequence of events proffered by the Government.  O'Neill testified that Thompson told her that he wanted to start selling cocaine in late spring or early summer of 2005.  O'Neill says that she subsequently saw Thompson cooking cocaine powder into crack-cocaine.  The search warrant was executed in

August of 2005.  Considering the short span of time between these events, it would not have been unreasonable for the jury to infer that the crack-cocaine O'Neill referred to was the same crack-cocaine seized by the Government.

### B.  Inconsistent Verdicts

#### 1.  Standard

Thompson next argues that he should be acquitted because the jury's verdict is inconsistent.  However, it is well established that inconsistent verdicts do not require reversal of the conviction.  United States v. Powell, 469 U.S. 57 (1984).  This principle is supported by decisions from the Court of Appeals for the Sixth Circuit.  See e.g. United States v. Gaitan-Acevedo, 148 F.3d 577, 586 (6th Cir. 1998) ("Inconsistent verdicts provide no basis for reversal") (quoting United Stated v. Le Master, 54 F. 3d 1224, 1233 (6th Cir, 1995)); United States v. Martin, 897 F.2d 1368, 1373 (6th Cir. 1990) ("a defendant may not upset a verdict solely because the verdict is not reconcilable with other verdicts for or against the defendant");  United States v. McCall, 85 F.3d 1193, 1197-98 (6th Cir. 1996) (holding that even a genuinely inconsistent verdict is not grounds for reversal).

#### 2. Arguments

While, acknowledging the general rule, Thompson says that his case is different because (1) the evidence here is insufficient to sustain a conviction on any of the counts; and (2) there is no rational explanation for why the jury convicted him on the possession and intent to sell crack-cocaine while acquitting him on the possession and intent to sell cocaine charge and heroin charge when all three narcotics were found in

the same milk crate, except that "the jury convicted Thompson based upon prior uncharged acts that were admitted over defense objection."[3] Thompson points out that the Supreme Court in Powell warned that verdicts based on insufficient evidence should not be confused with inconsistent verdicts. 469 U.S. at 67.

The Government maintains that the possible inconsistency in the verdict is not grounds for reversal of Thompson's conviction. The Government also compares this case to the facts in United States v. Quintero, 1989 WL 79830 (9th Cir.). In Quintero Epifanio Baldenegro, and two other defendants were charged with possession of heroin and cocaine with intent to distribute. Id. at *1. Baldenegro was found guilty of aiding and abetting distribution of cocaine, but not of heroin. Id. at *6. He argued that this verdict was inconsistent because his fingerprints were found inside the cookie jar which contained both drugs. Id. After stating that inconsistent verdicts do not require the reversal of the conviction, Powell, 469 U.S. at 63, the Ninth Circuit went on the explain that the verdict was not necessarily inconsistent because the evidence indicated that Baldenegro was present when the cocaine was sold, and that while his fingerprints were found inside the cookie can, his fingerprints were not found on the heroin package itself, but that another defendants' fingerprints were found on the heroin package. Id.

Thompson says that Quintero is distinguishable from his case because Baldenegro's fingerprints were found in the cookie can, and here there was no evidence that Thompson had touched the milk crate, or any of the narcotics found in the milk

---

[3] Thompson appears to be referring to O'Neill's testimony that she had seen him cooking crack-cocaine on two occasions; that he told her that he intended to sell cocaine; and that she and Gardener had stolen crack-cocaine from him.

crate, or that he was aware that crack-cocaine was in the storage room.

### 3. Resolution

Ultimately, the Court's inquiry into this issue is limited, and for good reason. As explained by the Supreme Court in Powell, review of inconsistent verdicts is "imprudent and unworkable" since individualized assessments of the reasons for inconsistency would be based with on "pure speculation" or would require a court to inquire into the jury's deliberation. 469 U.S. at 66. Instead, once a court establishes that there is sufficient evidence to sustain a conviction, the inquiry ends:

> [A] criminal defendant already is afforded protection against jury irrationality or error by the independent review of the sufficiency of the evidence undertaken by the trial and appellate courts ... This review should be independent of the jury's determination that evidence on another count was insufficient. The Government must convince the jury with its proof, and must also satisfy the courts that given this proof the jury could rationally have reached a verdict of guilty beyond a reasonable doubt. We do not believe that further safeguards against jury irrationality are necessary.

Powell, 469 U.S. at 67.

As already explained, there was sufficient evidence to connect Thompson to the narcotics found in the storage room. Thompson had the only key found that opened the storage room door; he was seen carrying a white bag from the storage room to the carwash; the carwash was a drug distribution site.

Moreover, the facts in Quintero are instructive. The fact that the jury convicted Thompson on the crack-cocaine charge but acquitted him on the heroin and cocaine charges may well have been based on O'Neill's testimony. If so, this indicates that the verdict was not inconsistent because the jury could have reasonably concluded that

O'Neill's testimony established that Thompson had a particular association with crack-cocaine, but not with heroin or cocaine.

    SO ORDERED.

                                      s/Avern Cohn  
                                      AVERN COHN  
                                      UNITED STATES DISTRICT JUDGE

Dated: April 11, 2007

I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, April 11, 2007, by electronic and/or ordinary mail.

                                      s/Julie Owens  
                                      Case Manager, (313) 234-5160